1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE WARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION and DOE ONE through and including DOE TEN,<br><br>Defendants. | Case No. 2:08-cv-02013-JHN-SSx<br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br>*Hon. Jacqueline H. Nguyen* |

This is an action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, with pendent claims under the California Labor Code. The matter was tried before the Court based on stipulated facts submitted by the parties on December 28, 2010, with oral argument heard by the Court on June 27, 2011. Having reviewed the facts and considered the parties' arguments, the Court finds in favor of Defendant.

## *PROCEDURAL BACKGROUND*

Plaintiff Carrie Ward ("Ward") originally filed suit in California Superior Court on January 24, 2008. The complaint alleges that Costco Wholesale Corporation ("Costco"), her past employer, violated minimum wage and overtime compensation provisions of the FLSA and the California Labor Code by deducting credit-card balances from departing

employees' pay.

Costco removed the action to federal court on March 26, 2009. On May 6, 2009, the Court, the Honorable Florence-Marie Cooper presiding, denied Costco's motion for summary judgment. ("MSJ Order"; docket no. 37.) In that order, the Court rejected numerous arguments raised by Costco that would have relieved it of liability under both the FLSA and California law.

On September 14, 2009, Plaintiff filed separate motions to certify a class under Federal Rule of Civil Procedure 23 and to certify an FLSA collective action. (Docket nos. 50, 52.) On March 23, 2010, the Court granted certification of an FLSA collective action and denied Rule 23 class certification. (Docket no. 71.) Notice of the collective action was mailed to potential opt-in plaintiffs on June 11, 2010. (*See* docket no. 100.) Eighteen Plaintiffs opted in by the deadline of August 10, 2010.[1]

At the final pretrial conference held on October 18, 2010, the parties informed the Court that they had agreed the matter could proceed as a court trial on stipulated facts. Having received and reviewed the Stipulated Facts submitted by the parties as well as the trial briefs, memoranda of factual and legal contentions, and other materials, the Court heard oral argument on June 27, 2011.

The following constitute findings of fact and conclusion of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.[2]

### FINDINGS OF FACT

The Court adopts the Stipulated Facts filed by the Parties on December 28, 2010 (docket no. 123), which are attached to this Order as Court Exhibit 1 and are incorporated by reference. The following is a summary of facts relevant to the Court's Conclusions of Law.

---

[1]  All Opt-In Plaintiffs in this action are identified in the parties' Stipulated Facts, which are attached to this Order.

[2]  To the extent any findings of fact may be deemed conclusions of law, they shall also be considered conclusions. Similarly, to the extent any conclusions as stated may be deemed findings of fact, they shall also be considered findings.

Plaintiffs claim that Costco violated federal and state labor laws by deducting the amounts they owed on Costco-guaranteed credit cards from their paychecks upon their termination from Costco's employ. The guaranteed credit-card program allowed employees to make purchases at Costco using a credit card issued by Household Retail Services, a subsidiary of HSBC Finance Corporation. Costco guaranteed the credit card in the event of an employee's default. Pursuant to authorization agreements signed by its employees, after each of the Plaintiffs in this case terminated employment with Costco, Costco deducted an amount equal to the employee's credit-card balance from a paycheck issued to the employee.[3]

Six Plaintiffs were issued a single paycheck after their termination, which included both pay for the final pay period and accrued vacation and sick leave pay. The credit-card balance was deducted from that single check. However, for thirteen of the nineteen Plaintiffs, two separate checks were issued, with the credit-card balance deducted from only one of those checks. For five of these Plaintiffs, both checks included wages. For the other eight Plaintiffs with two checks, one check included only non-work pay, and invariably the credit-card deduction was taken from that check. For all Plaintiffs, the credit-card deduction was taken from a check that also included accrued leave pay, and the credit-card deduction was less than the amount of the leave pay in all instances. Additionally, of the thirteen Plaintiffs with two checks, the two checks were issued on the same day for three Plaintiffs, within three days of each other for six Plaintiffs, and at least two weeks apart for four Plaintiffs. Four these four, the credit-card deduction was taken from the second of the two checks, which included no pay for time worked.

### CONCLUSIONS OF LAW

***A.   Jurisdiction and Venue***

---

[3]  The Application Authorization for Deduction form is attached as Exhibit A to the Stipulated Facts submitted by the parties (Ct. Ex. 1). Seven of the opt-in plaintiffs also signed a Termination Authorization for Deduction form on their termination from Costco. That form is attached to the Stipulated Facts as Exhibit B.

This Court has jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). Venue is proper in the Central District of California under 28 U.S.C. § 1441(a).

**B.    Plaintiffs' FLSA Claims**

The FLSA states that "[e]very employer shall pay to each of his [or her] employees . . . wages [of] not less than [the minimum wage]." 29 U.S.C. § 206(a). The FLSA also states:

> no employer shall employ any of his [or her] employees . . . for a workweek longer than forty hours unless such employee receives compensation for his [or her] employment in excess of the hours above specified at a rate not less than one and one-half times [his or her] regular rate . . . .

*Id.* § 207(a).

In the event that an employee is not paid all of his or her minimum wages and/or overtime compensation, the employee may bring suit to collect the outstanding amount and to collect an additional, equivalent amount in liquidated damages. *See id.* § 216(b).

"In a suit brought under the FLSA, the employee has the burden of proving that the employee was not properly compensated for work performed." *Imada v. City of Hercules*, 138 F.3d 1294, 1296 (9th Cir. 1998).

Here, Plaintiffs seek recovery for claimed violations of §§ 206(a) and 207(a) as a result of amounts withheld from Plaintiffs' paychecks, which Costco used to pay the outstanding balances on Plaintiffs' Costco-guaranteed credit cards.

However, Plaintiffs have not met their burden of establishing a minimum wage or overtime compensation violation on the facts before the Court. As to these nineteen Plaintiffs, there is no showing that Costco did not pay the required minimum and overtime wages, because none had an amount withheld high enough to invade minimum or overtime wages.

Plaintiffs assert that in determining whether they received the applicable minimum and overtime wages, only gross wages for hours worked may be considered. In support of this contention, Plaintiffs point to the Court's order of May 6, 2009, denying summary

judgment to Costco, in which the Court concluded that "vacation and sick pay should be excluded from the calculation of whether the FLSA's minimum wage and overtime provisions have been satisfied." (MSJ Order 5.) However, that conclusion was reached in the context of an undeveloped factual record and reflected concerns that different employees might be treated differently depending on whether they had accrued sufficient vacation and sick leave pay to cover the credit-card withholding. In the present context of a fully developed factual record, as to these nineteen particular Plaintiffs, the Court finds these concerns no longer at issue and concludes that it is not appropriate to disregard the pay for accrued vacation and sick time.

Moreover, to disregard vacation and sick time would be inconsistent with the evidence before the Court. For eight of the nineteen Plaintiffs, the credit-card deduction was taken from a paycheck that did not include any wages for hours worked. For three of these Plaintiffs, the check from which the deduction was taken was issued at least two months after the last check with a payment for hours worked. Most tellingly, one Plaintiff—Allen Pederson—was issued his last paycheck for hours worked in October 2006, and the credit-card deduction was taken from a check issued more than a year later, in February 2008, which included only pay for vacation and sick leave. Under these circumstances, there is no reasoned basis to consider only pay for hours worked.

Finally, for these nineteen Plaintiffs, including those who were issued a single paycheck representing work pay, leave pay, and credit-card deductions, each was paid enough for work and non-work pay to cover the amount of that individual's credit-card withholding without resulting in a minimum or overtime wage violation. Indeed, in the case of every Plaintiff, the credit-card deduction was less than the amount of leave pay.

Accordingly, though the Court does not reach the question of whether Costco's policy of deducting credit-card balances from departing employees' pay might violate the FLSA's minimum wage and overtime compensation provisions under circumstances

different from those presently before the Court, the Court concludes that for these specific Plaintiffs, no such violation has been proved.[4]

## C.    *Plaintiffs' Labor Code Claims*

The California Labor Code requires that all employees be paid a minimum wage. *See* Cal. Lab. Code § 1182.12. The Labor Code also provides:

> [a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.

*Id.* § 510(a).

In the event that an employee is not paid all of his or her minimum wages and/or overtime compensation, the employee may bring suit to collect the outstanding amount. *See id.* § 1194(a) ("Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation . . . ."). The employee is also entitled to recover liquidated damages. *See id.* § 1194.2(a) ("In any action under Section 1193.6 or Section 1194 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission, an employee

---

[4]  The parties hotly contested issues related to the statute of limitations for Plaintiffs' claims. Because the Court determines that Plaintiffs have not established FLSA violations, the Court need not reach the statute-of-limitations issue. However, even if Plaintiffs had the benefit of the three-year statute of limitations for willful violations of the FLSA and 645 days of equitable tolling (436 days between when Plaintiffs sought the identities of potential opt-in plaintiffs and when Defendants provided that information to the Claims Administrator, as provided in the Court's Order of May 21, 2010 (docket no. 98), and 209 days between the opt-in deadline and the date that Plaintiffs' written consents were filed with the Court), the FLSA claims of Plaintiffs Desiree Briones, Kristen Price, and Ward would be time-barred. Moreover, even if the Court were to determine, as Plaintiffs argue, that the declaration filed by Ward on September 14, 2009, may serve as a valid consent, Ward's claims would be time-barred for nonwillful violations, and all claims brought by her would be time-barred if the Court agreed with Costco's argument that equitable tolling should not apply to her.

shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon . . . .”). Furthermore, the Labor Code provides for additional damages in the event that an employee is not provided all wages upon the termination of his or her employment. More specifically, according to section 201 of the Labor Code, “[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately.” *Id.* § 201(a). Section 202 of the Labor Code provides that “[i]f an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter . . . .” *Id.* § 202(a). According to section 203 of the Labor Code:

> [i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

*Id.* § 203(a).

The employee bears the burden of proving that he or she was improperly compensated for work performed. *Eicher v. Advanced Bus. Integrators, Inc.*, 151 Cal. App. 4th 1363, 1377 (2007).

Plaintiffs seek recovery under the California Labor Code under the same theory as that underlying their FLSA claims. Therefore, for the same reasons as discussed above, Plaintiffs have failed to show minimum wage or overtime compensation violations. Because Costco did not fail to pay wages to these departing employees on termination, Plaintiffs have also failed to establish an entitlement to continuing-wages penalties under Labor Code section 203(a).[5]

---

[5] As above, because the Court determines that Plaintiffs have no valid claims under the California Labor Code, the Court need not reach issues related to the statute of limitations for the California claims.

***CONCLUSION***

      Based on its findings of fact and conclusions of law, the Court concludes that Defendant Costco is entitled to have judgment entered in its favor.

IT IS SO ORDERED.

DATED: August 01, 2011

_____

Honorable Jacqueline H. Nguyen
UNITED STATES DISTRICT COURT

COURT'S EXHIBIT ONE

Alan Harris (SBN 146079)
David Zelenski (SBN 231768)
HARRIS & RUBLE
6424 Santa Monica Boulevard
Los Angeles, California  90038
Telephone:  323.962.3777
Facsimile:  323.962.3004
aharris@harrisandruble.com
dzelenski@harrisandruble.com

Attorneys for Plaintiffs

SEYFARTH SHAW LLP
Kenwood C. Youmans (SBN 68258)
David D. Kadue (SBN 113578)
kyoumans@seyfarth.com
dkadue@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone: (310) 277-7200
Facsimile: (310) 201-5219

SEYFARTH SHAW LLP
Timothy M. Rusche (SBN 230036)
trusche@seyfarth.com
333 South Hope Street, Suite 3900
Los Angeles, California 90071-1406
Telephone: (213) 270-9600
Facsimile: (213) 270-9601

Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARRIE WARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION  and DOE ONE through and including DOE TEN<br><br>Defendants. | Case No. CV08-02013 JHN (AJW)<br><br>[HON. JACQUELINE H. NGUYEN]<br>CRTM 790<br><br>**STIPULATED FACTS AND EXHIBITS A THROUGH D**<br><br>Trial Date:     January 25, 2011, 9:00 a.m. |

Plaintiffs and Defendant, Costco Wholesale Corporation ("Costco"), submit the following list of stipulated facts.  The parties dispute as to whether all of the facts are material for purposes of the Court's decision.

| FACT NO. | STIPULATED FACT |
|---|---|
| | **Facts Regarding the Costco-Guaranteed Credit Card Program** |
| 1. | At all relevant times, Plaintiffs were engaged in commerce or in the production of goods for commerce. |
| 2. | At all relevant times, Defendant Costco Wholesale Corporation was an enterprise engaged in commerce or in the production of goods for commerce. |
| 3. | Plaintiffs are former Costco employees and, at all relevant times, were employed by Defendant in California. |
| 4. | All Plaintiffs voluntarily applied for and received Costco-guaranteed credit cards. |
| 5. | Costco's guaranteed credit-card program allows employees to use Costco-guaranteed credit cards to purchase goods at Costco warehouses at actual retail price. |
| 6. | The Costco-guaranteed credit cards were issued by Household Retail Services ("HRS"), a subsidiary of HSBC Finance Corporation. |
| 7. | Plaintiffs were liable directly to HRS for charges they incurred on their Costco-guaranteed credit card. |
| 8. | Plaintiffs each signed a document styled "Application Authorization for Deduction" stating (a) that Costco could "deduct any amounts Costco has cause to pay on [Plaintiffs'] behalf due to [Plaintiffs'] default in fulfilling the terms of [Plaintiffs'] contract with Household Retail Services" and (b) that Costco could "deduct from [Plaintiffs'] final paycheck upon [Plaintiffs'] separation from employment with Costco, whenever that may occur, the full amount of any outstanding balance on [Plaintiffs'] corporate guaranteed employee credit card, including interest and late charges, and any amounts that Costco may have cause to pay on [Plaintiffs'] behalf due to [Plaintiffs'] default in fulfilling the terms of [Plaintiffs'] contract with Household Retail Services."[1] |
| 9. | In addition, upon termination of their employment with Costco, the following Plaintiffs signed a document styled "Termination Authorization for Deduction" stating that Costco could deduct the balance owed on the Plaintiff's credit card from the Plaintiff's final paycheck:  Nicole Fowler, |

---

[1] Attached as Exhibit A is a blank Application Authorization for Deduction form.

| Fact No. | Stipulated Fact |
|---|---|
|  | Jervon McKnight, Eddie Moye, Kristen Price, Thomas Stokes, Paul Wesbrooks, and Christian Wise.[2] |
| 10. | Costco agreed to be responsible to HRS for the amounts on Plaintiffs' Costco-guaranteed credit cards in the event of default by Plaintiffs. |
| 11. | Plaintiffs bought goods and products from Costco with the use of their credit cards. |
| 12. | Plaintiffs were charged the retail prices offered to the general public for goods they purchased with their Costco-guaranteed credit cards. |
| 13. | Plaintiffs had used the wages deducted from their final paycheck to purchase items from Costco. |
| 14. | Costco withheld from Plaintiffs' final paychecks an amount equal to the balances on the Costco-guaranteed credit cards. |
| 15. | Costco redirected the withholding from Plaintiffs' final paychecks to HRS in order to pay the outstanding balances. |
| **Facts Regarding Carrie Ward** ||
| 16. | On May 20, 2006, Costco issued Carrie Ward's final paycheck, as identified on the attached summary chart, Exhibit D.[3] |
| 17. | At the time Ward's employment with Costco ended, her regular hourly rate was $13.37. |
| 18. | Ward's final paycheck reflects that, during her final pay period, she performed 41.00 hours of nonovertime work and 0.24 hours of overtime work. |
| 19. | Ward's final paycheck reflects that she earned $586.40 for 41.24 hours of work and reflects payment of an additional $1,282.19 for non-work hours (e.g., sick pay and vacation pay).  This paycheck is the last paycheck that Ward received reflecting compensation for hours actually worked by Ward. |
| 20. | Ward's final paycheck reflects that she earned compensation for 0.24 hours of work at a 1.5-times premium of her hourly rate. |
| 21. | Ward's final paycheck reflects that, of her 41.00 hours of nonovertime work, 5.00 hours were worked on Sundays. |

[2] Attached as Exhibit B is a blank Termination Authorization for Deduction form.
[3] Attached as Exhibit C is Ward's final paycheck.  Attached as Exhibit D is a summary chart, including the Plaintiffs' final paychecks.

| FACT NO. | STIPULATED FACT |
|---|---|
| 22. | Ward's final paycheck reflects that she earned compensation at a premium rate of $20.05 per hour for hours worked on Sundays. |
| 23. | Ward's final paycheck reflects that she earned $100.27 for 5.00 hours of work performed on Sundays. |
| 24. | Ward's final paycheck was subject to deductions for taxes, 401k contributions, and a withholding equal to Ward's credit-card debt to HRS. |
| 25. | Ward's gross pay of $1,868.59 in her final paycheck was reduced by $1,637.31 to result in a net payment of $231.28. |
| 26. | The withholding for Ward's credit-card debt equaled $1,139.55. |
| 27. | At termination, the balance on Ward's Costco-guaranteed credit card was $1,139.55. |
| 28. | Costco paid Ward a gross total of $729.04 before deductions for taxes and her 401k contribution. |
| 29. | The credit-card deduction exceeded Ward's compensation for the 41.24 hours of work by $553.15. |
| **Facts Regarding Adriana Acosta** | |
| 30. | On June 23, 2006, Costco issued Adriana Acosta paychecks, as identified on the attached summary chart, Exhibit D. |
| 31. | At the time Acosta's employment with Costco ended, her regular hourly rate was $12.15. |
| 32. | One of Acosta's paychecks, for the pay period ending June 18, 2006, reflects that Acosta earned $548.18 for 44.46 hours of nonovertime work and 0.09 hours of overtime work and reflects payment of $0.00 for non-work hours (e.g., sick pay and vacation pay).  This paycheck is the last paycheck that Acosta received reflecting compensation for hours actually worked by Acosta.  June 23, 2006, was Costco's biweekly pay day for work performed between June 5, 2006, and June 18, 2006. |
| 33. | Acosta's other paycheck reflects that Acosta earned $0.00 for 0.00 hours of nonovertime work and 0.00 hours of overtime work, reflects payment of an additional $988.05 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $477.66.  This paycheck states that the "PAYDATE" is July 2, 2006. |
| 34. | Acosta's paychecks reflect that she earned compensation for 0.09 hours of work at a 1.5-times premium of her hourly rate. |

| FACT NO. | STIPULATED FACT |
|---|---|
| 35. | The June 23, 2006 paycheck for the pay period ending June 18, 2006, contains deductions for taxes and 401k contributions. The other June 23, 2006 paycheck reflecting a "PAYDATE" of July 2, 2006, contains deductions for taxes, 401k contributions, and a withholding equal to Acosta's credit-card debt to HRS. |
| 36. | Acosta's gross pay of $1,536.23 in her paychecks was reduced by $710.06 to result in a net payment of $826.17. |
| 37. | The withholding for Acosta's credit-card debt equaled $477.66. |
| 38. | At termination, the balance on Acosta's Costco-guaranteed credit card was $477.66. |
| 39. | The paychecks reflect that Costco paid Acosta a gross total of $1,058.57 before deductions for taxes and her 401k contribution. |
| 40. | Acosta's compensation for the 44.55 hours of work reflected in the paychecks exceeded the credit-card deduction by $70.52. |
| | **Facts Regarding Matthew Boteler** |
| 41. | On July 5 and 7, 2006, Costco issued Matthew Boteler paychecks, as identified on the attached summary chart, Exhibit D. |
| 42. | At the time Boteler's employment with Costco ended, his regular hourly rate was $17.07. |
| 43. | The July 7, 2006 paycheck, for the pay period ending July 2, 2006, reflects that Boteler earned $17.92 for 1.05 hours of nonovertime work and 0.00 hours of overtime work and reflects payment of an additional $1,229.04 for non-work hours (e.g., sick pay and vacation pay). This paycheck is the last paycheck that Boteler received reflecting compensation for hours actually worked by Boteler. July 7, 2006, was Costco's biweekly pay day for work performed between June 19, 2006, and July 2, 2006. |
| 44. | The July 5, 2006 paycheck reflects that Boteler earned $0.00 for 0.00 hours of nonovertime work and 0.00 hours of overtime work, reflects payment of $1,638.21 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $1,040.76. This paycheck states that the "PAYDATE" is July 16, 2006. |
| 45. | The July 7, 2006 paycheck for the pay period ending July 2, 2006, contains deductions for taxes. The July 5, 2006 paycheck reflecting a "PAYDATE" of July 16, 2006, contains deductions for taxes and a withholding equal to Boteler's credit-card debt to HRS. |
| 46. | Boteler's gross pay of $2,885.17 in his paychecks was reduced by $1,854.95 to result in a net payment of $1,030.22. |

| FACT NO. | STIPULATED FACT |
|----------|-----------------|
| 47. | The withholding for Boteler's credit-card debt equaled $1,040.76. |
| 48. | At termination, the balance on Boteler's Costco-guaranteed credit card was $1,040.76. |
| 49. | The July 5 and 7, 2006, paychecks reflect that Costco paid Boteler a gross total of $1,844.41 before deductions for taxes. |
| 50. | The credit-card deduction exceeded Boteler's compensation for the 1.05 hours of work reflected in the July 5 and 7, 2006, paychecks by $1,022.84. |
| | **Facts Regarding Desiree Briones** |
| 51. | On April 19, 2006, Costco issued Desiree Briones' final paycheck, as identified on the attached summary chart, Exhibit D. |
| 52. | At the time Briones' employment with Costco ended, her regular hourly rate was $14.00. |
| 53. | Briones' final paycheck reflects that, during her final pay period, she performed 8.00 hours of nonovertime work and 0.00 hours of overtime work. |
| 54. | Briones' final paycheck reflects that she earned $112.00 for 8.00 hours of work and reflects payment of an additional $1,044.54 for non-work hours (e.g., sick pay and vacation pay).  This paycheck is the last paycheck that Briones received reflecting compensation for hours actually worked by Briones. |
| 55. | Briones' final paycheck was subject to deductions for taxes and a withholding equal to Briones' credit-card debt to HRS. |
| 56. | Briones' gross pay of $1,156.54 in her final paycheck was reduced by $892.18 to result in a net payment of $264.36. |
| 57. | The withholding for Briones' credit-card debt equaled $628.70. |
| 58. | At termination, the balance on Briones' Costco-guaranteed credit card was $628.70. |
| 59. | Costco paid Briones a gross total of $527.84 before deductions for taxes. |
| 60. | The credit-card deduction exceeded Briones' compensation for the 8.00 hours of work by $516.70. |

STIPULATED FACTS

| FACT NO. | STIPULATED FACT |
|---|---|
| | **Facts Regarding Jose Esparza** |
| 61. | On January 10 and 11, 2008, Costco issued Jose Esparza paychecks, as identified on the attached summary chart, Exhibit D. |
| 62. | At the time Esparza's employment with Costco ended, his regular hourly rate was $17.80. |
| 63. | The January 11, 2008 paycheck, for the pay period ending January 6, 2008, reflects that Esparza earned $918.66 for 51.46 hours of nonovertime work and 0.10 hours of overtime work and reflects payment of an additional $379.50 for non-work hours (e.g., sick pay and vacation pay).  This paycheck is the last paycheck that Esparza received reflecting compensation for hours actually worked by Esparza.  January 11, 2008, was Costco's biweekly pay day for work performed between December 24, 2007, and January 6, 2008. |
| 64. | The January 10, 2008 paycheck reflects that Esparza earned $0.00 for 0.00 hours of nonovertime work and 0.00 hours of overtime work, reflects payment of $3,999.83 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $484.12.  This paycheck states that the "PAYDATE" is January 20, 2008. |
| 65. | The January 11, 2008 paycheck reflects that Esparza earned compensation for 0.10 hours of work at a 1.5-times premium of his hourly rate. |
| 66. | The January 11, 2008 paycheck for the pay period ending January 6, 2008, contains deductions for taxes and 401k contributions.  The January 10, 2006 paycheck reflecting a "PAYDATE" of January 20, 2008, contains deductions for taxes, 401k contributions, and a withholding equal to Esparza's credit-card debt to HRS. |
| 67. | Esparza's gross pay of $5,297.99 in his January 10 and 11, 2008 paychecks was reduced by $1,692.50 to result in a net payment of $3,605.49. |
| 68. | The withholding for Esparza's credit-card debt equaled $484.12. |
| 69. | At termination, the balance on Esparza's Costco-guaranteed credit card was $484.12. |
| 70. | The January 10 and 11, 2008, paychecks reflect that Costco paid Esparza a gross total of $4,813.87 before deductions for taxes and his 401k contribution. |
| 71. | Esparza's compensation for the 51.56 hours of work reflected in the January 10 and 11, 2008, paychecks exceeded the credit-card deduction by $434.54. |

| Fact No. | Stipulated Fact |
|---|---|
| | **Facts Regarding Nicole Fowler** |
| 72. | On October 5, 2009, Costco issued Nicole Fowler's final paycheck, as identified on the attached summary chart, Exhibit D. |
| 73. | At the time Fowler's employment with Costco ended, her regular hourly rate was $21.00. |
| 74. | Fowler's final paycheck reflects that, during her final pay period, she performed 12.99 hours of nonovertime work and 0.00 hours of overtime work. |
| 75. | Fowler's final paycheck reflects that she earned $272.99 for 12.99 hours of work and reflects an additional payment of $2,736.51 for non-work hours (e.g., sick pay and vacation pay).  This paycheck is the last paycheck that Fowler received reflecting compensation for hours actually worked by Fowler. |
| 76. | Fowler's final paycheck was subject to deductions for taxes and a withholding equal to Fowler's credit-card debt to HRS. |
| 77. | Fowler's gross pay of $3,009.30 in her final paycheck was reduced by $1,177.60 to result in a net payment of $1,831.70. |
| 78. | The withholding for Fowler's credit-card debt equaled $391.40. |
| 79. | At termination, the balance on Fowler's Costco-guaranteed credit card was $391.40. |
| 80. | Costco paid Fowler a gross total of $2,617.90 before deductions for taxes and her 401k contribution. |
| 81. | The credit-card deduction exceeded Fowler's compensation for the 12.99 hours of work by $118.41. |
| | **Facts Regarding Shari Heidohrn** |
| 82. | On April 20, 2007, and August 24, 2007, Costco issued Shari Heidohrn paychecks, as identified on the attached summary chart, Exhibit D. |
| 83. | At the time Heidohrn's employment with Costco ended, her regular hourly rate was $11.60. |
| 84. | The April 20, 2007 paycheck, for the pay period ending April 15, 2007, reflects that Heidohrn earned $316.22 for 27.26 hours of nonovertime work and 0.00 hours of overtime work and reflects payment of $0.00 for non-work hours (e.g., sick pay and vacation pay).  This paycheck is the last paycheck that Heidohrn received reflecting compensation for hours actually |

| FACT NO. | STIPULATED FACT |
|---|---|
| | worked by Heidohrn.  April 20, 2007, was Costco's biweekly pay day for work performed between April 2, 2007, and April 15, 2007. |
| 85. | The August 24, 2007 paycheck reflects that Heidohrn earned $0.00 for 0.00 hours of work, reflects payment of an additional $13.57 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $9.92.  This paycheck states that the "PAYDATE" is August 19, 2007. |
| 86. | The April 20, 2007 paycheck for the pay period ending April 15, 2007, contains deductions for taxes and 401k contributions.  The August 24, 2007 paycheck reflecting a "PAYDATE" of August 19, 2007, contains deductions for taxes, 401k contributions, and a withholding equal to Heidohrn's credit-card debt to HRS. |
| 87. | Heidohrn's gross pay of $13.57 in her August 24, 2007, paycheck was reduced by $13.90 to result in a net payment of $0.00. |
| 88. | The withholding for Heidohrn's credit-card debt equaled $9.92. |
| 89. | At termination, the balance on Heidohrn's Costco-guaranteed credit card was $9.92. |
| 90. | The August 24, 2007, paycheck reflects that Costco paid Heidohrn a gross total of $3.65 before deductions for taxes and her 401k contribution. |
| 91. | The credit-card deduction exceeded Heidohrn's compensation for the 0.00 hours of work reflected in the August 24, 2007, paycheck by $9.92. |
| | **Facts Regarding Shane Hipkins** |
| 92. | On July 22, 2006, Costco issued Shane Hipkins' final paycheck, as identified on the attached summary chart, Exhibit D. |
| 93. | At the time Hipkins' employment with Costco ended, his regular hourly rate was $17.20. |
| 94. | Hipkins' final paycheck reflects that, during his final pay period, he performed 17.50 hours of nonovertime work and 0.00 hours of overtime work. |
| 95. | Hipkins' final paycheck reflects that he earned $301.00 for 17.50 hours of work and reflects payment of an additional $1,951.86 for non-work hours (e.g., sick pay and vacation pay).  This paycheck is the last paycheck that Hipkins received reflecting compensation for hours actually worked by Hipkins. |
| 96. | Hipkins' final paycheck was subject to deductions for taxes, 401k contributions, and a withholding equal to Hipkins' credit-card debt to HRS. |

| FACT NO. | STIPULATED FACT |
|----------|-----------------|
| 97. | Hipkins' gross pay of $2,252.86 in his final paycheck was reduced by $884.46 to result in a net payment of $1,368.40. |
| 98. | The withholding for Hipkins' credit-card debt equaled $487.57. |
| 99. | At termination, the balance on Hipkins' Costco-guaranteed credit card was $487.57. |
| 100. | Costco paid Hipkins a gross total of $1,765.29 before deductions for taxes and his 401k contribution. |
| 101. | The credit-card deduction exceeded Hipkins' compensation for the 17.50 hours of work by $186.57. |
| **Facts Regarding Jason Lemus** | |
| 102. | On December 15, 2006, and January 3, 2007, Costco issued Jason Lemus paychecks, as identified on the attached summary chart, Exhibit D. |
| 103. | At the time Lemus' employment with Costco ended, his regular hourly rate was $19.42. |
| 104. | The December 15, 2006 paycheck, for the pay period ending December 10, 2006, reflects that Lemus earned $926.33 for 47.70 hours of nonovertime work and 0.00 hours of overtime work and reflects payment of $0.00 for non-work hours (e.g., sick pay and vacation pay). This paycheck is the last paycheck that Lemus received reflecting compensation for hours actually worked by Lemus. December 15, 2006, was Costco's biweekly pay day for work performed between November 27, 2006, and December 10, 2006. |
| 105. | The January 3, 2007 paycheck reflects that Lemus earned $0.00 for 0.00 hours of work, reflects payment of an additional $3,444.91 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $462.38. This paycheck states that the "PAYDATE" is January 7, 2007. |
| 106. | The December 15, 2006 paycheck for the pay period ending December 10, 2006, contains deductions for taxes and 401k contributions. The January 3, 2007 paycheck reflecting a "PAYDATE" of January 7, 2006, contains deductions for taxes, 401k contributions, and a withholding equal to Lemus' credit-card debt to HRS. |
| 107. | Lemus' gross pay of $3,444.91 in his January 3, 2007, paycheck was reduced by $1,461.17 to result in a net payment of $1,983.74. |
| 108. | The withholding for Lemus' credit-card debt equaled $462.38. |

| FACT NO. | STIPULATED FACT |
|---|---|
| 109. | At termination, the balance on Lemus' Costco-guaranteed credit card was $462.38. |
| 110. | The January 3, 2007, paycheck reflects that Costco paid Lemus a gross total of $2,982.53 before deductions for taxes and his 401k contribution. |
| 111. | The credit-card deduction exceeded Lemus' compensation for the 0.00 hours of work reflected in the January 3, 2007, paycheck by $462.38. |
| **Facts Regarding Jervon McKnight** | |
| 112. | On April 28, 2006, and July 14, 2006, Costco issued Jervon McKnight paychecks, as identified on the attached summary chart, Exhibit D. |
| 113. | At the time McKnight's employment with Costco ended, his regular hourly rate was $17.07. |
| 114. | The April 28, 2006, paycheck, for the pay period ending April 23, 2006, reflects that McKnight earned $956.42 for 55.55 hours of nonovertime work and 0.32 hours of overtime work and reflects payment of an additional $382.53 for non-work hours (e.g., sick pay and vacation pay). This paycheck is the last paycheck that McKnight received reflecting compensation for hours actually worked by McKnight.  April 28, 2006, was Costco's biweekly pay day for work performed between April 10, 2006, and April 23, 2006. |
| 115. | The July 14, 2006, paycheck reflects that McKnight earned $0.00 for 0.00 hours of work and reflects payment of an additional $2,898.49 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $350.04.  This paycheck states that the "PAYDATE" is July 16, 2006. |
| 116. | The April 28, 2006, paycheck reflects that McKnight earned compensation for 0.32 hours of work at a 1.5-times premium of his hourly rate. |
| 117. | The April 28, 2006 paycheck for the pay period ending April 23, 2006, contains deductions for taxes and 401k contributions.  The July 14, 2006 paycheck reflecting a "PAYDATE" of July 16, 2006, contains deductions for taxes, 401k contributions, and a withholding equal to McKnight's credit-card debt to HRS. |
| 118. | McKnight's gross pay of $2,898.49 in his July 14, 2006, paycheck was reduced by $1,207.58 to result in a net payment of $1,690.91. |
| 119. | The withholding for McKnight's credit-card debt equaled $350.04. |
| 120. | At termination, the balance on McKnight's Costco-guaranteed credit card was $350.04. |

| FACT NO. | STIPULATED FACT |
|----------|-----------------|
| 121. | The July 14, 2006, paycheck reflects that Costco paid McKnight a gross total of $2,548.45 before deductions for taxes and his 401k contribution. |
| 122. | The credit-card deduction exceeded McKnight's compensation for the 0.00 hours of work reflected in the July 14, 2006, paycheck by $350.04. |
| | **Facts Regarding Eddie Moye** |
| 123. | On March 11, 2008, Costco issued Eddie Moye's final paycheck, as identified on the attached summary chart, Exhibit D. |
| 124. | At the time Moye's employment with Costco ended, he earned an hourly rate of $19.75. |
| 125. | Moy's final paycheck reflects that, during his final pay period, Moye performed 39.92 hours of nonovertime work and 0.15 hours of overtime work. |
| 126. | Moye's final paycheck reflects that he earned $792.86 for 40.07 hours of work and reflects an additional payment of $4,041.24 for non-work hours (e.g., sick pay and vacation pay). This paycheck is the last paycheck that Moye received reflecting compensation for hours actually worked by Moye. |
| 127. | Moye's final paycheck reflects that he earned compensation for 0.15 hours of work at a 1.5-times premium of his hourly rate. |
| 128. | Moye's final paycheck was subject to deductions for taxes, 401k contributions, and a withholding equal to Moye's credit-card debt to HRS. |
| 129. | Moye's gross pay of $4,834.10 in his final paycheck was reduced by $2,362.33 to result in a net payment of $2,471.77. |
| 130. | The withholding for Moye's credit-card debt equaled $703.68. |
| 131. | At termination, the balance on Moye's Costco-guaranteed credit card was $703.68. |
| 132. | Costco paid Moye a gross total of $4,130.42 before deductions for taxes and his 401k contribution. |
| 133. | Moye's compensation for the 40.07 hours of work exceeded the credit-card deduction by $89.18. |

| FACT NO. | STIPULATED FACT |
|---|---|
| | **Facts Regarding Hoang Nguy** |
| 134. | On October 20 and 23, 2006, Costco issued Hoang Nguy paychecks, as identified on the attached summary chart, Exhibit D. |
| 135. | At the time Nguy's employment with Costco ended, her regular hourly rate was $17.37. |
| 136. | The October 20, 2006, paycheck, for the pay period ending October 15, 2006, reflects that Nguy earned $819.34 for 47.17 hours of nonovertime work and 0.00 hours of overtime work and reflects payment of $0.00 for non-work hours (e.g., sick pay and vacation pay).  October 20, 2006, was Costco's biweekly pay day for work performed between October 2, 2006, and October 15, 2006. |
| 137. | The October 23, 2006, paycheck reflects that Nguy earned $351.05 for 20.00 hours of nonovertime work and 0.14 hours of overtime work, reflects payment of an additional $3,181.41 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $616.55.  This paycheck is the last paycheck that Nguy received reflecting compensation for hours actually worked by Nguy.  This paycheck states that the "PAYDATE" is October 29, 2006. |
| 138. | The October 23, 2006, paycheck reflects that Nguy earned compensation for 0.14 hours of work at a 1.5-times premium of her hourly rate. |
| 139. | The October 20, 2006 paycheck for the pay period ending October 15, 2006, contains deductions for taxes and 401k contributions.  The October 23, 2006 paycheck reflecting a "PAYDATE" of October 29, 2006, contains deductions for taxes, 401k contributions, and a withholding equal to Nguy's credit-card debt to HRS. |
| 140. | Nguy's gross pay of $3,534.46 in her October 23, 2006, paycheck was reduced by $1,430.77 to result in a net payment of $2,103.69. |
| 141. | The withholding for Nguy's credit-card debt equaled $616.55. |
| 142. | At termination, the balance on Nguy's Costco-guaranteed credit card was $616.55. |
| 143. | The October 23, 2006, paycheck reflects that Costco paid Nguy a gross total of $2,917.91 before deductions for taxes and her 401k contribution. |
| 144. | The credit-card deduction exceeded Nguy's compensation for the 20.14 hours of work reflected in the October 23, 2006, paycheck by $265.50. |

| FACT NO. | STIPULATED FACT |
|---|---|
| | **Facts Regarding Cheri Partida** |
| 145. | On December 29 and 31, 2006, Costco issued Cheri Partida paychecks, as identified on the attached summary chart, Exhibit D. |
| 146. | At the time Partida's employment with Costco ended, her regular hourly rate was $11.60. |
| 147. | The December 29, 2006, paycheck, for the pay period ending December 24, 2006, reflects that Partida earned $550.79 for 43.04 hours of nonovertime work and 0.95 hours of overtime work and reflects payment of $0.00 for non-work hours (e.g., sick pay and vacation pay).  December 29, 2006, was Costco's biweekly pay day for work performed between December 11, 2006, and December 24, 2006. |
| 148. | The December 31, 2006, paycheck reflects that Partida earned $57.07 for 4.92 hours of nonovertime work and 0.00 hours of overtime work, reflects an additional payment of $1001.08 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $367.16.  This paycheck is the last paycheck that Partida received reflecting compensation for hours actually worked by Partida.  This paycheck states that the "PAYDATE" is January 7, 2007. |
| 149. | The December 29, 2006, paycheck reflects that Partida earned compensation for 0.95 hours of work at a 1.5-times premium of her hourly rate. |
| 150. | The December 29, 2006, paycheck reflects that, of Partida's 43.04 hours of nonovertime work, 5.00 hours were worked on Sundays. |
| 151. | The December 29, 2006, paycheck reflects that Partida earned compensation at a premium rate of $17.40 per hour for hours worked on Sundays. |
| 152. | The December 29, 2006, paycheck reflects that Partida earned $87.00 for 5.00 hours of work performed on Sundays. |
| 153. | The December 29, 2006 paycheck for the pay period ending December 24, 2006, contains deductions for taxes and 401k contributions.  The December 31, 2006 paycheck contains reflecting a "PAYDATE" of January 7, 2007, deductions for taxes, 401k contributions, and a withholding equal to Partida's credit-card debt to HRS. |
| 154. | Partida's gross pay of $1,608.94 in her December 29 and 31, 2006, paychecks was reduced by $802.52 to result in a net payment of $806.42. |
| 155. | The withholding for Partida's credit-card debt equaled $367.16. |

| Fact No. | Stipulated Fact |
|---|---|
| 156. | At termination, the balance on Partida's Costco-guaranteed credit card was $367.16. |
| 157. | The December 29 and 31, 2006, paychecks reflect that Costco paid Partida a gross total of $1,241.78 before deductions for taxes and her 401k contribution. |
| 158. | The credit-card deduction exceeded Partida's compensation for the 4.92 hours of work reflected in the December 29 and 31, 2006, paychecks by $310.09. |
| | **Facts Regarding Allen Pederson** |
| 159. | On October 20, 2006, and February 8, 2008, Costco issued Allen Pederson paychecks, as identified on the attached summary chart, Exhibit D. |
| 160. | At the time Pederson's employment with Costco ended, his hourly rate was $26.92. |
| 161. | The October 20, 2006, paycheck, for the pay period ending October 15, 2006, reflects that Pederson earned $1,692.31 for 64.00 hours of nonovertime work and 0.00 hours of overtime work and reflects payment of $0.50 for non-work hours (e.g., sick pay and vacation pay). This paycheck is the last paycheck that Pederson received reflecting compensation for hours actually worked by Pederson. October 20, 2006, was Costco's biweekly pay day for work performed between October 2, 2006, and October 15, 2006. |
| 162. | The February 8, 2008, paycheck reflects that Pederson earned $0.00 for 0.00 hours of work, reflects an additional payment of $697.85 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $636.00. This paycheck states that the "PAYDATE" is February 17, 2008. |
| 163. | The October 20, 2006 paycheck for the pay period ending October 15, 2006, contains deductions for taxes and 401k contributions. The February 8, 2008 paycheck reflecting a "PAYDATE" of February 17, 2008, contains deductions for taxes and a withholding equal to Pederson's credit-card debt to HRS. |
| 164. | Pederson's gross pay of $697.85 in his February 8, 2008, paycheck was reduced by $694.97 to result in a net payment of $2.88. |
| 165. | The withholding for Pederson's credit-card debt equaled $636.00. |
| 166. | At termination, the balance on Pederson's Costco-guaranteed credit card was $636.00. |

STIPULATED FACTS

| Fact No. | Stipulated Fact |
|---|---|
| 167. | The February 8, 2008, paycheck reflects that Costco paid Pederson a gross total of $61.85 before deductions for taxes. |
| 168. | The credit-card deduction exceeded Pederson's compensation for the 0.00 hours of work reflected in the February 8, 2008, paycheck by $636.00 |
| **Facts Regarding Kristen Price** | |
| 169. | On May 9 and 12, 2006, Costco issued Kristen Price paychecks, as identified on the attached summary chart, Exhibit D. |
| 170. | At the time Price's employment with Costco ended, her regular hourly rate was $19.87. |
| 171. | The May 9, 2006 paycheck reflects that Price earned $0.00 for 0.00 hours of nonovertime work and 0.00 hours of overtime work, reflects payment of $2,949.90 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction in the amount of $213.19.  This paycheck states that the "PAYDATE" is May 21, 2006. |
| 172. | The May 12, 2006 paycheck, for the pay period ending May 7, 2006, reflects that Price earned $1,541.70 for 69.81 hours of nonovertime work and 0.15 hours of overtime work and reflects payment of $129.16 for non-work hours (e.g., sick pay and vacation pay).  This paycheck is the last paycheck that Price received reflecting compensation for hours actually worked by Price.  May 12, 2006, was Costco's biweekly pay day for work performed between April 24, 2006, and May 7, 2006. |
| 173. | Price's May 12, 2006 paycheck reflects that she earned compensation for 0.15 hours of work at a 1.5-times premium of her hourly rate. |
| 174. | Price's May 12, 2006 paychecks reflect that, of her 69.81 hours of nonovertime work, 15.11 were performed on Sundays. |
| 175. | Price's May 12, 2006 paychecks reflect that she earned compensation at a premium rate of $29.80 per hour for hours worked on Sundays. |
| 176. | The May 9, 2006 paycheck reflecting a "PAYDATE" of May 21, 2006, contains deductions for taxes, 401k contributions, and a withholding equal to Price's credit-card debt to HRS.  The May 12, 2006 paycheck for the pay period ending May 7, 2006, contains deductions for taxes and 401k contributions. |
| 177. | Price's gross pay of $4,620.76 in her May 9 and 12, 2006 paychecks was reduced by $1,919.09 to result in a net payment of $2,701.67. |
| 178. | The withholding for Price's credit-card debt equaled $213.19. |

| FACT NO. | STIPULATED FACT |
|---|---|
| 179. | At termination, the balance on Price's Costco-guaranteed credit card was $213.19. |
| 180. | The May 9 and 12, 2006, paychecks reflect that Costco paid Price a gross total of $4,407.57 before deductions for taxes and her 401k contribution. |
| 181. | Price's compensation for the 69.96 hours of work reflected in the May 9 and 12, 2006, paychecks exceeded the credit-card deduction by $1,328.51. |
| | **Facts Regarding Christine Sandoval** |
| 182. | On September 7 and 9, 2007, Costco issued Christine Sandoval paychecks, as identified on the attached summary chart, Exhibit D. |
| 183. | At the time Sandoval's employment with Costco ended, her regular hourly rate was $19.32. |
| 184. | The September 9, 2007 paycheck reflects that Sandoval earned $202.86 for 7.00 hours of nonovertime work and 0.00 hours of overtime work, reflects payment of $2,164.61 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $440.74. This paycheck is the last paycheck that Sandoval received reflecting compensation for hours actually worked by Sandoval. This paycheck states that the "PAYDATE" is September 16, 2007. |
| 185. | The September 7, 2007 paycheck, for the pay period ending September 2, 2007, reflects that Sandoval earned $314.91 for 12.66 hours of nonovertime work and 0.00 hours of overtime work and reflects payment of $168.08 for non-work hours (e.g., sick pay and vacation pay). September 7, 2007, was Costco's biweekly pay day for work performed between August 20, 2007, and September 2, 2007. |
| 186. | Sandoval's September 7 and 9, 2007 paychecks reflect that she worked 14.28 Sunday hours. |
| 187. | Sandoval's September 7 and 9, 2007 paychecks reflect that she earned compensation at a premium rate of $28.98 per hour for hours worked on Sundays. |
| 188. | Sandoval's September 7 and 9, 2007 paychecks reflect that she earned $413.83 for 14.28 hours of work performed on Sundays. |
| 189. | Sandoval's regular rate of pay for 14.28 hours of work yielded her at least $275.89. |
| 190. | The September 7, 2007 paycheck for the pay period ending September 2, 2006, contains deductions for taxes. The September 9, 2007 paycheck reflecting a "PAYDATE" of September 16, 2007, contains deductions for taxes and a withholding equal to Sandoval's credit-card debt to HRS. |

| FACT NO. | STIPULATED FACT |
|---|---|
| 191. | Sandoval's gross pay of $2,850.46 in her September 7 and 9, 2007 paychecks was reduced by $968.77 to result in a net payment of $1,881.69. |
| 192. | The withholding for Sandoval's credit-card debt equaled $440.74. |
| 193. | At termination, the balance on Sandoval's Costco-guaranteed credit card was $440.74. |
| 194. | The September 7 and 9, 2007, paychecks reflect that Costco paid Sandoval a gross total of $2,409.72 before deductions for taxes and her 401k contribution. |
| 195. | Sandoval's compensation for the 19.66 hours of work reflected in the September 7 and 9, 2007, paychecks exceeded the credit-card deduction by $77.03 |
| **Facts Regarding Thomas Stokes** | |
| 196. | On June 15, 2006, Costco issued Thomas Stokes' final paycheck, as identified on the attached summary chart, Exhibit D. |
| 197. | At the time Stokes' employment with Costco ended, his regular hourly rate was $20.40. |
| 198. | Stokes' final paycheck reflects that, during his final pay period, he performed 44.00 hours of nonovertime work and 2.30 hours of overtime work. |
| 199. | Stokes' final paycheck reflects that he earned $967.98 for 46.30 hours of work and reflects an additional payment of $6,352.77 for non-work hours (e.g., sick pay and vacation pay). This paycheck is the last paycheck that Stokes received reflecting compensation for hours actually worked by Stokes. |
| 200. | Stokes' final paycheck reflects that he earned compensation for 2.30 hours of work at a 1.5-times premium of his hourly rate. |
| 201. | Stokes' final paycheck was subject to deductions for taxes and a withholding equal to Stokes' credit-card debt to HRS. |
| 202. | Stokes' gross pay of $7,320.75 in his final paycheck was reduced by $2,355.40 to result in a net payment of $4,965.35. |
| 203. | The withholding for Stokes' credit-card debt equaled $57.44. |
| 204. | At termination, the balance on Stokes' Costco-guaranteed credit card was $57.44. |

| FACT NO. | STIPULATED FACT |
|---|---|
| 205. | Costco paid Stokes a gross total of $7,263.31 before deductions for taxes. |
| 206. | Stokes' compensation for the 40.07 hours of work exceeded the credit-card deduction by $910.54. |
| | **Facts Regarding Paul Wesbrooks** |
| 207. | On January 11, 2008, Costco issued Paul Wesbrooks paychecks, as identified on the attached summary chart, Exhibit D.  These paychecks are the last paychecks that Wesbrooks received reflecting compensation for hours actually worked by Wesbrooks. |
| 208. | At the time Wesbrooks' employment with Costco ended, his regular hourly rate was $17.80. |
| 209. | One of Wesbrooks' paychecks reflects that Wesbrooks earned $243.15 for 13.66 hours of nonovertime work and 0.00 hours of overtime work, reflects payment of $5,177.84 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $180.35.  This paycheck states that the "PAYDATE" is January 20, 2008. |
| 210. | Wesbrooks' other paycheck, for the pay period ending January 6, 2008, reflects that he earned $494.04 for 21.48 hours of nonovertime work and 0.00 hours of overtime work and reflects payment of an additional $285.86 for non-work hours (e.g., sick pay and vacation pay).  January 11, 2008, was Costco's biweekly pay day for work performed between December 24, 2007, and January 6, 2008. |
| 211. | Wesbrooks' paychecks reflect that, of his 35.14 hours of nonovertime work, 12.55 were worked on Sundays. |
| 212. | Wesbrooks' paychecks reflect that he earned compensation at a premium rate of $26.70 per hour for hours worked on Sundays. |
| 213. | Wesbrooks' paychecks reflect that he earned $355.09 for 12.55 hours of work performed on Sundays. |
| 214. | The paycheck in stipulated fact no. 210 contains deductions for taxes and 401k contributions.  The paycheck in stipulated fact no. 209 contains deductions for taxes, 401k contributions, and a withholding equal to Wesbrooks' credit-card debt to HRS. |
| 215. | Wesbrooks' gross pay of $6,200.89 in his paychecks was reduced by $2,385.51 to result in a net payment of $3,815.38. |
| 216. | The withholding for Wesbrooks' credit-card debt equaled $180.35. |

| FACT NO. | STIPULATED FACT |
|---|---|
| 217. | At termination, the balance on Wesbrooks' Costco-guaranteed credit card was $180.35. |
| 218. | The paychecks reflect that Costco paid Wesbrooks a gross total of $6,020.54 before deductions for taxes and his 401k contribution. |
| 219. | Wesbrooks' compensation for the 35.14 hours of work reflected in the paychecks exceeded the credit-card deduction by $556.84. |
| | **Facts Regarding Christian Wise** |
| 220. | On February 22, 2008, Costco issued Christian Wise two paychecks, as identified on the attached summary chart, Exhibit D. These paychecks are the last paychecks that Wise received reflecting compensation for hours actually worked by Wise. |
| 221. | At the time Wise's employment with Costco ended, his regular hourly rate was $17.97. |
| 222. | One of Wise's paychecks reflects that Wise earned $71.88 for 4.00 hours of nonovertime work and 0.00 hours of overtime work, reflects payment of $3,807.30 for non-work hours (e.g., sick pay and vacation pay), and reflects a credit-card deduction of $698.39. This paycheck states that the "PAYDATE" is March 2, 2008. |
| 223. | Wise's other paycheck, for the pay period ending February 17, 2008, reflects that Wise earned $730.97 for 40.67 hours of nonovertime work and 0.00 hours of overtime work and reflects payment of $0.00 for non-work hours (e.g., sick pay and vacation pay). February 22, 2008, was Costco's biweekly pay day for work performed between February 4, 2008, and February 17, 2008. |
| 224. | Wise's paychecks reflect that, of his 56.17 hours of nonovertime work, 11.50 hours were worked on Sundays. |
| 225. | Wise's paychecks reflect that he earned compensation at a premium rate of $26.95 per hour for hours worked on Sundays. |
| 226. | The paycheck in stipulated fact no. 223 contains deductions for taxes and 401k contributions. The paycheck in stipulated fact no. 222 contains deductions for taxes, 401k contributions, and a withholding equal to Wise's credit-card debt to HRS. |
| 227. | Wise's gross pay of $4,920.13 in his paychecks was reduced by $2,622.32 to result in a net payment of $2,297.81. |
| 228. | The withholding for Wise's credit-card debt equaled $698.39. |

| Fact No. | Stipulated Fact |
|---|---|
| 229. | At termination, the balance on Wise's Costco-guaranteed credit card was $698.39. |
| 230. | The paychecks reflect that Costco paid Wise a gross total of $4,213.88 before deductions for taxes and his 401k contribution. |
| 231. | Wise's compensation for the 56.17 hours of work reflected in the paychecks exceeded the credit-card deduction by $406.58. |

DATED: December 28, 2010          SEYFARTH SHAW LLP


By ____/s/ Timothy M. Rusche_____
      Timothy M. Rusche
Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

DATED: December 28, 2010          HARRIS & RUBLE


By _____/s/_____
      Alan Harris
      David Zelenski
Attorneys for Plaintiffs

EXHIBIT A

**APPLICATION**
**AUTHORIZATION FOR DEDUCTION**

**Deduction from Final Paycheck.**

As a condition of receiving the corporate guaranteed employee credit card, I hereby authorize Costco to deduct from my final paycheck upon my separation from employment with Costco, whenever that may occur, the full amount of any outstanding balance on my corporate guaranteed employee credit card, including interest and late charges, and any amounts that Costco may have cause to pay on my behalf due to my default in fulfilling the terms of my contract with Household Retail Services (HRS) (formerly known as Beneficial National Bank) relating to the corporate guaranteed employee credit card.

I also agree that if asked to do so by Costco, I will execute an additional authorization at the time of my separation from employment with Costco, authorizing Costco to deduct from my final paycheck the full amount of any outstanding balance on my corporate guaranteed employee credit card, including interest and late charges, and any amounts that Costco may have cause to pay on my behalf due to my default in fulfilling the terms of my contract with Household Retail Services (HRS) (formerly known as Beneficial National Bank) relating to the corporate guaranteed employee credit card.

**Deductions from Paychecks during Employment.**

As a further condition of receiving the corporate guaranteed employee credit card, I also hereby authorize Costco to deduct any amounts Costco may have cause to pay on my behalf due to my default in fulfilling the terms of my contract with Household Retail Services (HRS) (formerly known as Beneficial National Bank) relating to the corporate guaranteed employee credit card, from my paychecks plus interest at nine percent (9%), in 26 equal installments, to be deducted from 26 consecutive paychecks, commencing with the paycheck for the pay period following the aforementioned payment by Costco.

I also agree that if asked to do so by Costco, I will execute an additional authorization at the time of any such default by me, authorizing Costco to deduct any amounts Costco may have cause to pay on my behalf due to my default in fulfilling the terms of my contract with Household Retail Services (HRS) (formerly known as Beneficial National Bank) relating to the corporate guaranteed employee credit card plus interest at nine percent (9%), from my paychecks, in 26 equal installments, to be deducted from 26 consecutive paychecks, commencing with the paycheck for the pay period following the aforementioned payment by Costco.

Name_____          Date _____

Signature_____          Warehouse # _____

Employee # _____

**FORM #PR46US  12/98**

C000006

EXHIBIT B

# TERMINATION
## AUTHORIZATION FOR DEDUCTION

I hereby authorize Costco to deduct $_____ from my final paycheck, which I understand represents the full amount of the outstanding balance on my corporate guaranteed employee credit card, including interest and late charges, together with any amounts that Costco may have had cause to pay on my behalf due to any default by me in fulfilling the terms of my contract with Household Retail Services (HRS) (formerly known as Beneficial National Bank) relating to the corporate guaranteed employee credit card.

Name _____       Date _____

Signature _____

Employee Number _____       Warehouse # _____

FORM #PR47 12/98

C000005

EXHIBIT C

**COSTCO WHOLESALE #462**
951 PALOMAR AIRPORT RD.
CARLSBAD, CA 92011

BANK OF AMERICA
SOUTH PORTLAND, ME

52-153/112

No. 4628072

05/20/06

TWO HUNDRED THIRTY ONE DOLLARS & 28/100 *********                231.28

CARRIE WARD

NON-NEGOTIABLE

⑆4628072⑆ ⑈011201539⑈ 80 060 766⑆

| 05/20 | 4628072 | 25.52 | $ 13.37 | REG PAY | 0001 | 341.20 | 27.10 | FICA2 |
|---|---|---|---|---|---|---|---|---|
| | | 10.48 | $ 13.37 | ALTREG | 0101 | 140.12 | 115.85 | FICA |
| | | .24 | $ 20.04 | OVERTIME | 0005 | 4.81 | 245.59 | FIT |
| | | 4.25 | $ 20.05 | SUNDAY | 0206 | 85.20 | 14.94 | SDI |
| | | .75 | $ 20.05 | ALT SUNDA | 0207 | 15.04 | 75.59 | STATE |
| | | 35.10 | $ 13.37 | SICK P/C | 0009 | 469.29 | 18.69 | 401K |
| | | 60.80 | $ 13.37 | VAC PAY | 0003 | 812.90 | | 401K |
| | | | $ | | | | | EH CLUB |
| | | | $ | | | | | UNION |
| | | | $ | CRBD/CARD | | | 1135.55 | OTHRR |
| | | 137.14 | | | SUB-TOTAL $ 1,868.59 | | $ 1,637.31 | |
| | | TOTAL HOURS | | | | | NET $ | 231.28 |

462 23800.99 MO

COSTCO WHOLESALE #462
951 PALOMAR AIRPORT RD.
CARLSBAD, CA 92011

NON-NEGOTIABLE

C000201

EXHIBIT D

## Exhibit D:  Chart Regarding Ward and Opt-in Plaintiffs

| Name | Date of Paycheck(s) | Income on Paycheck(s) | | | | Credit-Card Deduction |
|------|---------------------|-----------------------|---|---|---|-----------------------|
| | | Reg. Hrs, Wages | OT Hrs., Wages | Sunday Hrs., Wages | Pay for Non-Work Hrs. | |
| Briones | 4/19/2006 | 8.00, $112.00 | 0.00, $0.00 | 0.00, $0.00 | $1,044.54 | $628.70 |
| Price | 5/9/2006 | 0.00, $0.00 | 0.00, $0.00 | 0.00, $0.00 | $2,949.90 | $213.19 |
| | 5/12/2006 | 54.70, $1,086.88 | 0.15, $4.47 | 15.11, $450.35 | $129.16 | $0.00 |
| Ward | 5/20/2006 | 36.00, $481.32 | 0.24, $4.81 | 5.00, $100.27 | $1,282.19 | $1,139.55 |
| Stokes | 6/15/2006 | 44.00, $897.60 | 2.30, $70.38 | 0.00, $0.00 | $6,352.77 | $57.44 |
| Acosta | 6/23/2006 | 44.46, $546.54 | 0.09, $1.64 | 0.00, $0.00 | $0.00 | $0.00 |
| | 6/23/2006 | 0.00, $0.00 | 0.00, $0.00 | 0.00, $0.00 | $988.05 | $477.66 |
| Boteler | 7/5/2006 | 0.00, $0.00 | 0.00, $0.00 | 0.00, $0.00 | $1,638.21 | $1,040.76 |
| | 7/7/2006 | 1.05, $17.92 | 0.00, $0.00 | 0.00, $0.00 | $1,229.04 | $0.00 |
| McKnight | 4/28/2006 | 55.55, $948.23 | 0.32, $8.19 | 0.00, $0.00 | $384.17 | $0.00 |
| | 7/14/2006 | 0.00, $0.00 | 0.00, $0.00 | 0.00, $0.00 | $2,898.49 | $350.04 |
| Hipkins | 7/22/2006 | 17.50, $301.00 | 0.00, $0.00 | 0.00, $0.00 | $1,951.86 | $487.57 |
| Nguy | 10/20/2006 | 47.17, $819.34 | 0.00, $0.00 | 0.00, $0.00 | $5.90 | $0.00 |
| | 10/23/2006 | 20.00, $347.40 | 0.14, $3.65 | 0.00, $0.00 | $3,183.41 | $616.55 |
| Partida | 12/29/2006 | 38.04, $447.26 | 0.95, $16.53 | 5.00, $87.00 | $0.00 | $0.00 |
| | 12/31/2006 | 4.92, $57.07 | 0.00, $0.00 | 0.00, $0.00 | $1,001.08 | $367.16 |
| Lemus | 12/15/2006 | 47.70, $926.33 | 0.00, $0.00 | 0.00, $0.00 | $0.00 | $0.00 |
| | 1/3/2007 | 0.00, $0.00 | 0.00, $0.00 | 0.00, $0.00 | $3,444.91 | $462.38 |
| Heidohrn | 4/20/2007 | 27.26, $316.22 | 0.00, $0.00 | 0.00, $0.00 | $0.00 | $0.00 |
| | 8/24/2007 | 0.00, $0.00 | 0.00, $0.00 | 0.00, $0.00 | $13.57 | $9.92 |
| Sandoval | 9/7/2007 | 5.38, $103.94 | 0.00, $0.00 | 7.28, $210.97 | $168.08 | $0.00 |
| | 9/9/2007 | 0.00, $0.00 | 0.00, $0.00 | 7.00, $202.86 | $2,164.61 | $440.74 |
| Esparza | 1/10/2008 | 0.00, $0.00 | 0.00, $0.00 | 0.00, $0.00 | $3,999.83 | $484.12 |
| | 1/11/2008 | 51.46, $915.99 | 0.10, $2.67 | 0.00, $0.00 | $379.50 | $0.00 |
| Wesbrooks | 1/11/2008 | 13.66, $243.15 | 0.00, $0.00 | 0.00, $0.00 | $5,177.84 | $180.35 |
| | 1/11/2008 | 8.93, $158.95 | 0.00, $0.00 | 12.55, $335.09 | $285.86 | $0.00 |
| Pederson | 10/20/2006 | 64.00, $1,692.31 | 0.00, $0.00 | 0.00, $0.00 | $0.50 | $0.00 |
| | 2/8/2008 | 0.00, $0.00 | 0.00, $0.00 | 0.00, $0.00 | $697.85 | $636.00 |
| Wise | 2/22/2008 | 4.00, $71.88 | 0.00, $0.00 | 0.00, $0.00 | $3,807.30 | $698.39 |
| | 2/22/2008 | 40.67, $730.97 | 0.00, $0.00 | 11.50, $309.98 | $0.00 | $0.00 |
| Moye | 3/11/2008 | 39.92, $788.42 | 0.15, $4.44 | 0.00, $0.00 | $4,041.24 | $703.68 |
| Fowler | 10/5/2009 | 12.99, $272.99 | 0.00, $0.00 | 0.00, $0.00 | $2,736.51 | $391.40 |